UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CYNTHIA JEAN SPENGLER,            )   Case No.   CV 12-3978-PJW
                                  )
            Plaintiff,            )
                                  )   MEMORANDUM OPINION AND ORDER
       v.                         )
                                  )
CAROLYN W. COLVIN,                )
ACTING COMMISSIONER OF THE        )
SOCIAL SECURITY ADMINISTRATION,   )
                                  )
            Defendant.            )
_____)

I.   INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for Supplemental Security Income ("SSI").  She claims that the Administrative Law Judge ("ALJ") erred when he found that she was not credible and when he rejected her treating doctor's opinion that she could not work.  For the following reasons, the ALJ's decision is reversed and the case is remanded for further consideration.

II.   SUMMARY OF PROCEEDINGS

In August 2009, Plaintiff applied for SSI, alleging that she was disabled as of September 2005, due to degenerative disc disease, depression, and bipolar disorder.  (Administrative Record ("AR") 144-

47, 158-61, 171.)  After her applications were denied initially and on reconsideration, she requested and was granted a hearing before an ALJ.  (AR 82-86, 89, 96.)  On September 23, 2010, she appeared with counsel at the hearing and testified.  (AR 27-62.)  On February 28, 2011, the ALJ issued a decision denying benefits.  (AR 70-81.) Plaintiff appealed to the Appeals Council, which denied review.  (AR 1-4, 26.)  This action followed.

### III.  ANALYSIS

Plaintiff contends that the ALJ erred when he found that she was not credible and when he rejected the treating doctor's opinion that she could not stand for more than 15 minutes at a time, lift greater than five pounds, or bend and twist at all.  (Joint Stip. at 5-10, 14-24, 28-30.)  For the following reasons, the Court finds that the ALJ erred when he rejected the treating doctor's opinion and remands the case for further proceedings.

A.  <u>The Credibility Determination</u>

ALJs are tasked with judging the credibility of witnesses.  In making these credibility determinations, they may employ ordinary credibility evaluation techniques.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons, *id.* at 1283-84, that are supported by substantial evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ determined that Plaintiff suffered from degenerative disc disease of the lumbar spine.  (AR 72.)  According to Plaintiff, this

condition limited her to standing, sitting, and walking for less than 15 minutes at a time. (AR 47, 166-67.) The ALJ rejected this testimony for eight enumerated reasons as well as others sprinkled throughout the decision. (AR 75-78.) For example, he found multiple inconsistencies in the record that caused him to question Plaintiff's truthfulness. (AR 76.) He pointed out that a Functional Report purportedly filled out by Plaintiff's case manager at Pacific Clinics was either filled out by claimant or was copied from claimant's own report. (AR 77.) The record supports this finding. The information provided by the author(s) of the forms is practically identical. (AR 162-69, 196-203.) In addition, as the ALJ noted, Plaintiff's case manager reported that Plaintiff's condition caused him to need assistance "shaving my legs" and "drying my hair," suggesting that Plaintiff had filled in at least certain parts of the form.[1] (AR 198.)

    The ALJ noted that Plaintiff told the examining psychiatrist that she could not read or write legibly but had filled out the Functional Report. (AR 76.) This, too, is supported by the record. (AR 162-69.)

    The ALJ also highlighted the fact that an examining doctor concluded that Plaintiff was exaggerating when she described her ailments during his examination. (AR 77.) This finding is also supported by the record. (AR 470.) So, too, is the ALJ's finding that Plaintiff contradicted herself when she reported in the Function

---

    [1] It appears that the form was filled out by two people. The first, the case manager, perhaps. And the second, likely Plaintiff, who attempted, it seems, to have supplemented the case manager's responses by interlineating additional points after he had finished filling out the form. (AR 196-203.)

Report that she needed glasses to use the computer but testified that she was unable to use a computer because she has dyslexia. (AR 32, 76, 168.) And the ALJ was right to question Plaintiff's claims of debilitating pain that left her unable to sit, stand, or walk for more than 15 minutes with her testimony that she continued to look for work despite this condition. (AR 76.)

But the ALJ's most compelling justification for questioning Plaintiff's testimony was the fact that, despite alleging an onset date of September 2005, she continued to work until 2009. (AR 77.) In her last job, as a sales attendant at Home Depot, Plaintiff worked four to six hours a day, 20 hours a week. (AR 43.) She testified that she sat for two-and-a-half to three hours in a five-hour shift on that job. (AR 43.) And Plaintiff only left the job because she was laid off due to the recession. (AR 34.) As the ALJ found, the fact that, in 2009, Plaintiff was capable of working five hours a day, 20 hours a week, undermined her testimony that her back ailment--which she claimed rendered her disabled as of September 2005--limited her to sitting, standing, and walking for 15 minutes at a time. (AR 77.)

By relying on these contradictions, the ALJ was employing ordinary credibility techniques, which he is allowed to do. The points he raised are specific, clear, and convincing and are supported by substantial evidence in the record. As such, his finding that Plaintiff was not credible will be affirmed.

Plaintiff objects. She argues that there are innocent explanations for the alleged discrepancies and that the Court should accept those innocent explanations. (Joint Stip. at 21-24.) That is not the Court's role, here. The Court is not asked to determine whether there is more than one interpretation of the evidence and/or

4

whether the Court would have reached the same conclusions that the ALJ did had it been in the ALJ's shoes.   Rather, where, as here, there are two possible interpretations of the evidence, the Court is mandated to uphold the ALJ's interpretation as long as it is rational.   *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).   And the ALJ's interpretation was rational so it will be upheld.[2]

Plaintiff argues that the ALJ had an obligation to point out the alleged contradictions and give her an opportunity to explain them. (Joint Stip. at 23.)   Again, the Court disagrees.   ALJs are not prosecutors and administrative hearings are not adversarial proceedings.   In fact, where ALJs have turned the hearings into inquisitions, this Court and the circuit courts have roundly criticized them for doing so.   *See, e.g., Ventura v. Shalala*, 55 F.3d 900, 902-04 (3d Cir. 1995) (holding claimant's due process rights were violated when ALJ expressed hostility toward claimant's lay representative's use of leading questions, interrupted the claimant's testimony to question the claimant in an intimidating manner on an irrelevant issue, and interfered with the admission of evidence as to

---

[2]   That is not to say that the Court endorses all of the reasons the ALJ relied on for questioning Plaintiff's testimony.   For example, he concluded that Plaintiff's daily activities were inconsistent with her claims of disabling pain.   (AR 76.)   The Court does not agree.   If Plaintiff was truly as limited by pain as she claimed, she would still be able to perform the minimal activities she testified about, like brushing her teeth and shopping for a few things occasionally. Ultimately, however, even discounting the ALJ's reliance on this and other questionable reasons for finding Plaintiff not credible, there are enough valid reasons remaining to uphold the ALJ's finding. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2011) ("Even if we discount some of the ALJ's observations of Tonapetyan's inconsistent statements and behavior, which might have innocent explanations as Tonapetyan contends, we are still left with substantial evidence to support the ALJ's credibility determination.").

physical causes of the claimant's pain); *Brown v. Astrue*, 2008 WL 4829943, at *2 (C.D. Cal. Oct. 31, 2009) ("In fact, it is the opinion of this Court that ALJ Everstine's conduct at the hearing was so intemperate as to give rise to an appearance of partiality.").  The record demonstrates that the ALJ did what he could to give Plaintiff and her counsel an opportunity to address some of these inconsistencies.  For example, he subtly pointed out to Plaintiff's counsel that Plaintiff's alleged onset date was 2005 but that she continued to work until 2009 and asked counsel if he wanted to amend the onset date.  (AR 61.)  Rather than put counsel on the spot, he allowed counsel to think about it and inform the court two weeks later, when counsel planned to file additional documents.  (AR 62.) Counsel chose to simply ignore the ALJ and never addressed the issue. (AR 509-30.)  It is too late now to do so.

    The ALJ made much of the apparent doctoring of the Functional Report filed by Plaintiff's case worker.  Plaintiff argues that the ALJ's reliance on the discrepancies in the report are overblown and unfair.  But, clearly, counsel knew, or should have known, that this report raised flags and addressed them at the hearing.  Certainly, the ALJ gave him every opportunity to do so.

B.   The Treating Physician's Opinion

    Plaintiff contends that the ALJ erred by rejecting the opinion of his treating orthopedist, Dr. Michael Kropf, and accepting, instead, the opinion of the examining orthopedist, Dr. Bilezikjian.  (Joint Stip. at 5-16.)  For the following reasons, the Court concludes that Plaintiff's argument here is meritorious.

    "By rule, the [Agency] favors the opinion of a treating physician over non-treating physicians."  *Orn v. Astrue*, 495 F.3d 625, 631 (9th

1   Cir. 2007); *see also Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir.
2   1999) (explaining that a treating physician's opinion "is given
3   deference because 'he is employed to cure and has a greater
4   opportunity to know and observe the patient as an individual'"
5   (*quoting Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987))).  For
6   this reason, a treating doctor's opinion that is well supported and
7   consistent with other substantial evidence in the record will be given
8   controlling weight.  *Orn*, 495 F.3d at 631; *Embrey v. Bowen*, 849 F.2d
9   418, 421 (9th Cir. 1988).  An ALJ may, however, reject a treating
10  doctor's opinion that is contradicted by another doctor's opinion for
11  "'specific and legitimate reasons' supported by substantial evidence
12  in the record."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)
13  (*quoting Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

14      The ALJ rejected the treating doctor's opinion because: (1) it
15  was not supported by the doctor's records; (2) the treating doctor had
16  recommended "only very conservative treatment"; and (3) the treating
17  doctor's opinion was suspect because it was rendered in connection
18  with Plaintiff's worker's compensation case.  (AR 78.)

19      The first reason for rejecting Dr. Kropf's opinion is inadequate
20  because the ALJ did not specify what evidence, or lack of evidence,
21  undermined Dr. Kropf's opinion.  *Embrey*, 849 F.2d at 421-22 ("To say
22  that medical opinions are not supported by sufficient objective
23  findings or are contrary to the preponderant conclusions mandated by
24  the objective findings does not achieve the level of specificity our
25  prior cases have required . . . .").  By failing to do so, the ALJ has
26  prevented the parties and the Court from being able to analyze his
27  reasoning.  On remand, he should explain what evidence or lack thereof
28  he is relying on to discount Dr. Kropf's opinion.

The second reason the ALJ discounted Dr. Kropf's opinion--because the doctor recommended "only very conservative treatments"--is also questionable.  To begin with, the doctor had recommended and Plaintiff had undergone a series of epidural injections in her back to treat her pain.  (AR 320, 325, 328.)  The Court does not view this procedure as "very conservative."  *See Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011); *but cf*. *Burnam v. Colvin*, 2013 WL 1933077, at *4 (7th Cir. May 10, 2013) (agreeing with district court that epidural injections constitute conservative treatment).  In addition to epidural injections, the doctor had considered and rejected surgery for Plaintiff, concluding that she was not a candidate for surgery because of "multilevels of involvement."  (AR 380.)  Presumably, the doctor was opining that Plaintiff's condition was serious but that it could not be resolved with surgery because more than one part of her spine was affected.

The third reason the ALJ gave for rejecting Dr. Kropf's opinion was that Plaintiff went to see him in connection with her worker's compensation case, which the ALJ believed undermined the doctor's independence.  (AR 78.)  That is not a legitimate reason to question a doctor's sincerity.  *Lester*, 81 F.3d 821, 832 (9th Cir. 1995) ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.")

Thus, none of the reasons provided by the ALJ for discounting the treating orthopedist's opinion is valid and, therefore, that finding is reversed.  On remand, the ALJ should reconsider the medical evidence and determine which opinion is entitled to the most weight and explain in detail the basis for his conclusion.

Plaintiff also complains that the ALJ failed to properly consider the "opinions" of another treating doctor, Dr. Nini.  (Joint Stip. at 9.)  These opinions that Plaintiff refers to, however, are nothing more than conclusions, scratched onto prescription pads, without any support whatsoever.  (AR 510-11.)  As such, the ALJ properly attributed to them the weight that they deserved: none.  In the context of a social security case, a doctor's opinion is only as good as the data he or she relies on to formulate that opinion.  Where, as here, the doctor does not provide any support for his conclusion (that Plaintiff cannot stand for more than 15 minutes and cannot lift or bend) the ALJ is at liberty to summarily reject it.  The ALJ may, however, invite Plaintiff to submit evidence to support Dr. Nini's "opinion" if he deems it appropriate.  The ALJ may also, at his discretion, develop the medical record further by receiving additional evidence concerning Plaintiff's back condition and/or requiring Plaintiff to be examined again by a consulting doctor.

IV.   CONCLUSION

For these reasons, the ALJ's decision is reversed and the case is remanded to the Agency for further consideration.[3]

IT IS SO ORDERED.

DATED: September 18, 2013.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\SPENGLER, 3978\Memo Opinion and Order.wpd

---

[3]   The Court has considered Plaintiff's request to remand for an award of benefits and finds that that relief is not warranted here because it is not clear from this record that Plaintiff's medical condition precludes her from working.

9